## PRYOR v. PRYOR.

No. 31233.   April 30, 1946.

*168 P. 2d 875.*

MacDonald & Files, of Pawhuska, for plaintiff in error.

Chas. R. Gray and W. N. Palmer, both of Pawhuska, and G. K. Sutherland, of Hominy, for defendant in error.

WELCH, J.   The issue is whether plaintiff in error, Ola Mae Pryor, now Simpkins, or defendant in error, Minnie Olivia McClure Pryor, is the surviving widow of Elmer Pryor, deceased, and entitled to inherit of his estate. No question of the legitimacy of children is involved, as neither woman had a child by Elmer.   The contesting parties will be referred to as "Ola Mae" and "Minnie."

The court found in favor of Minnie, and this appeal by Ola Mae requires a review of the record.

While there are various conflicts in details of the evidence and confusion in some instances as to the acts and intention of the parties, we believe the material facts gleaned from the record and the trial court's findings may be stated about as follows:

Early in the year 1938 Ola Mae and her then husband, Joe Souligny, conferred with an attorney in Pawhuska, where they resided, for the purpose of obtaining a divorce, a waiver of service was signed by her, and his petition for divorce was to be prepared and filed.   Shortly thereafter Ola Mae went to Texas.   She testified that while there she received a letter from Joe informing her that the divorce had been granted.   She returned to Pawhuska, and on March 15, 1938, she and Elmer Pryor obtained license and entered into a ceremonial marriage, and immediately commenced living together avowedly as husband and wife.

A short time thereafter they discovered that no divorce action had been filed and no divorce granted to Joe. Elmer and Ola Mae discussed the matter and arranged for her to obtain a divorce from Joe.   Such divorce was obtained on May 2, 1938.   Soon thereafter Elmer and Ola Mae discussed the matter of their remarriage, but did nothing about it except some continued cohabitation until some time in the following month of June, 1938, when they separated in Colorado Springs, Colo. Though there is some conflict in the evidence, it appears that they were thereafter together a few times, but quite infrequently, and their purpose and intent on such occasions was probably not with matrimonial intent.

In July, 1938, Ola Mae lived in a cottage camp in Colorado with another man.   Later, in 1938, she took up her residence with one Hamilton, and in October, 1940, filed suit against him for divorce, alleging a common-law marriage and cohabitation since October, 1938.

Meanwhile, on October 27, 1938, Elmer had filed petition for divorce from Ola Mae, or annulment of mar-

riage, the petition containing allegation, among other things, that they had been husband and wife since their ceremonial marriage on March 15, 1938. No summons was requested or issued until March 14, 1939, and no further action was taken in the case up to the time of Elmer's death on May 17, 1939. There was no other legal action between the two parties, and no formal decree of divorce or annulment between Ola Mae and Elmer.

Elmer entered into a ceremonial marriage with defendant in error Minnie on January 11, 1939, and lived with her as his wife up to the time of his death on May 17th of that year.

Following request by both parties the trial court made extended findings of fact which in general include the facts above stated, with other details. Notwithstanding the special findings, the trial court found the issues generally in favor of Minnie, apparently concluding that the purported marriage between Ola Mae and Elmer on March 15, 1938, was invalid because Ola Mae was then the wife of Joe Souligny; and that after dissolution of that marriage by divorce on May 2, 1938, there was no character of marriage between Ola Mae and Elmer.

The trial court evidently found that the relationship which had existed between Elmer and Ola Mae was no bar to the marriage on January 11, 1939, between Elmer and Minnie.

And the court concluded that Ola Mae was never the lawful wife of Elmer, and that Minnie was his wife at the time of his death, and is his surviving widow.

The specifications of error and grounds upon which Ola Mae seeks reversal may be summarized as contentions that the general findings and conclusions in favor of Minnie are clearly against the evidence; that conflicting special findings in favor of Ola Mae are controlling, and that the final conclusion and judgment is contrary to law.

It is rather apparent from the record that Ola Mae and Elmer were of matrimonial intent or inclination when they entered into a ceremonial or formal marriage on March 15, 1938. However, the sincerity of such attitude or intention is subject to question by reason of the fact that such marriage was void because Ola Mae was then the legal wife of Joe Souligny, and by reason of the further fact that if they, or Ola Mae, believed Souligny had obtained a divorce it would be based on belief that he had obtained such divorce only a month or two before, and, therefore, they knew they could not properly marry in March, 1938, or for a number of months thereafter.

In view of these facts it is difficult to assume that Ola Mae and Elmer were in complete good faith in their effort to marry, and in their belief of their marriage at that time. But assuming that they were in such good faith, they discovered in a very few weeks that they were not and could not be married, for Souligny had not obtained a divorce nor even filed action therefor.

Ola Mae did obtain a divorce from Souligny on May 2, 1938. We assume, then, that she and Elmer ascertained the true facts and that she filed her petition for this divorce some time in April, 1938, in so far as that point is material or important as to time. At any rate, since the ceremonial marriage between Ola Mae and Elmer in March, 1938, was bigamous and void, and since she was not divorced from Souligny until May 2, 1938, we conclude that the status of the relationship between Ola Mae and Elmer must be measured by events transpiring after May 2, 1938.

We observe, then, that after May 2, 1938, Ola Mae and Elmer did continue some cohabitation, including a trip to Colorado together, but such cohabitation was terminated after a few weeks. The subsequent action of both parties immediately thereafter and over a period of years tended strongly to support the trial court's conclusion that

Ola Mae and Elmer never contracted or consummated a valid marriage of any character. This is so because we observe that beginning in October, 1938, Ola Mae resided with one Hamilton as his wife and continued so to do until October, 1940, when she filed suit for divorce against Hamilton, alleging a common-law marriage and cohabitation since October, 1938. This would indicate that in October, 1938, Ola Mae considered herself as an unmarried person and thus eligible to assume the marriage relation with Hamilton, and that she continued of that mind at least for an extended period, and perhaps up to October, 1940, when she sought dissolution of her marriage with Hamilton. Likewise, in January, 1939, Elmer apparently considered that he was unmarried and eligible to enter into his ceremonial marriage with Minnie on January 11, 1939.

The trial court, in his conclusion and judgment, seems to have attached some weight to the facts and circumstances of the subsequent marriage of Ola Mae to another man, and the subsequent marriage of Elmer to another woman in considering and undertaking to determine what was the true intent, if any, between Ola Mae and Elmer during the prior period of time in May and June when they were together in Oklahoma and Colorado.

The trial court in thus giving consideration to these subsequent marriages was following the rule discussed at length by this court in Blackhawk v. Cannon, 195 Okla. 390, 158 P. 2d 168, with supporting authorities therein cited.

Thus we find that the acts and conduct of Ola Mae after June, 1938, were quite consistent with the conclusion that during those months there was no cohabitation with matrimonial intent and no common-law marriage with Elmer. Likewise, the acts and conduct of Elmer in marrying Minnie in January, 1939, and living with her as his wife until he died, are consistent with that same con-

clusion. We have not overlooked the fact that in October, 1938, Elmer had filed petition for divorce against Ola Mae, which on its face purported to recognize a formal marriage with Ola Mae. However, the marriage therein referred to was the ceremonial marriage of March 15, 1938. That marriage was void as above pointed out, nevertheless it was formally of record and Elmer may well have desired to have that marriage of record counteracted by a formal divorce or annulment, and in strict fact there is nothing in this petition or in the act of Elmer in seeking annulment of that marriage to indicate that Elmer intended to make any acknowledgment of the existence of a common-law marriage with Ola Mae by reason of their association or cohabitation in the months of May and June, 1938, after Ola Mae was divorced from Souligny on May 2, 1938. If that action of Elmer is so construed and considered, then we are justified in the view that Elmer's acts and conduct after June, 1938, are consistent with the conclusion of lack of matrimonial intent between Ola Mae and Elmer during the period when Ola Mae contends a common-law marriage between them was intended and consummated.

From a consideration of the entire record we are convinced that the conclusion of the trial court was not clearly against the weight of the evidence, but, on the contrary, is abundantly supported by the evidence.

It is true there are statements in the extended findings of fact which may be construed as being inconsistent with each other, and inconsistent with the final conclusion of the trial court. The trial court made 24 separate findings of fact, or stated his findings of fact in 24 numbered paragraphs. Our attention is called to the rule that where the separate or special findings as to the facts are contrary to final conclusion of judgment, the findings of fact must control, and judgment must be rendered accordingly, and we recognize a general applicability of such rule. If

we consider certain of the numbered paragraphs of findings separate and apart from the others, there might he some ground for alleging application of that rule in this case. But here the various numbered paragraphs of findings tend to complement and clarify each other. When that is true we think the various numbered paragraphs should be considered together as being the aggregate finding of facts when such consideration will tend to eliminate apparent inconsistency between the findings of fact and the final conclusion and judgment. Upon so considering the aggregate finding of facts as a whole we do not find such lack of harmony as to indicate that the trial court found one or certain separate facts and then rendered general judgment or reached a final conclusion in direct conflict with the facts; or with any fact theretofore found to be true in the separate findings. We find nothing in the said findings of fact in direct conflict with the ultimate conclusion of the trial court that Ola Mae was never the wife of Elmer, either by valid ceremonial marriage or by common-law marriage intended and consummated. Having set out the essential facts of the relationship between Ola Mae and Elmer, we deem it unnecessary to here restate the several essential prerequisites to the consummation of the common-law marriage as recognized in this jurisdiction.

The plaintiff in error presents several contentions or questions of law or propositions and briefed them with diligence. Among them are: (1) The legal result when a married woman, believing herself to be divorced, in good faith married another man, and upon learning no prior divorce has in fact been granted, obtains a divorce from her former husband, and she and her second husband continue to live together in good faith as husband and wife to and beyond the expiration of six months after the decree of divorce. (2) Those things in law which are required to constitute, or which are sufficient to constitute, a common-law marriage.

(3) The effect of, or the status of, a marriage consummated within six months after divorce. (4) The rule that certain presumptions of law arising in favor of the legality of marriages may be rebutted. (5) The rights of a surviving spouse arising under a voidable marriage.

We have not overlooked the argument of counsel upon these and other specific points, but deem these propositions to be not of controlling importance in view of the specific facts and circumstances here involved, and in view of the findings of the trial court as to the facts.

We conclude that the judgment of the trial court is amply supported by the evidence and that the judgment is not in any respect contrary to law. Affirmed.

GIBSON, C.J., and RILEY, OSBORN, CORN, and DAVISON, JJ., concur.